## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
|  | : |  |
| NORTHEAST REVENUE, SERVICES, LLC, | : | |
|  | : | |
| Plaintiff, | : | Civil Action No. 3:14-cv-00852 |
|  | : | |
| v. | : | (Judge Kosik) |
|  | : | |
| MAPS INDEED, INC., *et al.*, | : | |
|  | : | |
| Defendants. | : | |

_____ :

### MEMORANDUM

Before the Court are Defendant Filla's  Motion to Strike Declaration of John P. Rodgers, Esquire (Doc. 78), and Filla's Second Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (Doc. 44).  For the reasons which follow, the Court will grant in part and deny in part the motion to strike, and grant the motion to dismiss for lack of personal jurisdiction.

### I. PROCEDURAL HISTORY

The Court addresses only the pertinent procedural history, as relevant to Defendant Filla. On May 2, 2014, Plaintiff filed its Complaint (Doc. 1) against Maps inDeed, Inc. ("MID"), Victor DeAnthony, and James Filla.  Defendant Filla filed his first motion to dismiss for lack of personal jurisdiction and failure to state a claim (Doc. 14), on July 15, 2014.  On July 29, 2014, Plaintiff filed an Amended Complaint (Doc. 17) against MID, Victor DeAnthony, Jeffrey DeAnthony, InSequence, Inc. ("InSequence"), and James Filla.  Defendant Filla then filed his second motion to dismiss (Doc. 44), on August 26, 2014, and the parties filed their respective briefs.  Supporting Plaintiff's brief in opposition, Plaintiff filed a Declaration of John P. Rodgers,

Esquire (Doc. 62), which is the subject of Filla's motion to strike (Doc. 78).  The parties fully briefed both motions, and they are ripe for disposition.

## II.  FACTUAL BACKGROUND

Plaintiff, Northeast Revenue Services, LLC, is a Pennsylvania limited liability company. (Doc. 17, Pl.'s Am. Compl, ¶ 4.)  In the Amended Complaint, Plaintiff alleges that Defendant MID is a Virginia corporation, with a principal address in Virginia.  (Id. at ¶ 5.)  Plaintiff also alleges that Defendant InSequence is a Missouri corporation, with the same registered office as MID, as well as an office in Missouri, and "was/is the parent company, controlling shareholder, and alter ego" of MID.  (Id. at ¶ 8.)  Plaintiff alleges that Defendant Victor DeAnthony "was/is the president and chief executive officer" of MID, that Defendant Jeffrey DeAnthony "was/is the chief marketing officer" of MID, and that both are/were employees, agents, representatives, or principals of InSequence.  (Id. at ¶¶ 6, 7, 14.)  Plaintiff also alleges that Defendant James Filla "was/is the chief technology officer" at MID, "was/is a director and principal" of MID, and is president of InSequence.  (Id. at ¶ 9.)

Plaintiff's Amended Complaint stems from dealings with MID, and two of its alleged employees, Victor and Jeffrey DeAnthony.  Plaintiff alleges that MID, through the individual Defendants and InSequence, purported to be a technology company using global satellite imagery to provide a service to clients, to access and share geospatial and property data in real time and online.  (Id. at ¶ 23.)

On May 4, 2012, Plaintiff entered into an agreement with MID.  (Id. at ¶ 15; Ex. E, Agreement.)  Plaintiff alleges that the agreement was a profit-sharing, licensing, and stock-purchase option agreement, and that in return for services provided by MID, Plaintiff promised to

pay MID $150,000 in three installments.  (Id. at ¶¶ 15, 45.)  Plaintiff claims that it fully

performed under the agreement, and that Defendants failed to perform and did not provide any of

the agreed upon products, support, and/or services.  (Id. at ¶¶ 46-47.)

Plaintiff alleges that it entered into the agreement due to the individual Defendants' false

promises and misrepresentations.  (Id.)  Plaintiff claims that the terms of the agreement were

negotiated in Pennsylvania, and that false financial statements and projections were supplied to

Plaintiff, by Defendants in Pennsylvania.  (Id. at ¶¶ 36-37.)  Plaintiff also alleges that Defendants

Jeffrey and Victor DeAnthony personally extended oral warranties to Plaintiff, regarding the

viability and profitability of the products, services, and investment opportunities under the

agreement.  (Id. at ¶¶ 40-41.)

### III. STANDARD OF REVIEW

Defendant Filla files his motion to dismiss under Rules 12(b)(2) and 12(b)(6) of the

Federal Rules of Civil Procedure.  In considering a motion to dismiss under both Rule 12(b)(2)

and Rule 12(b)(6), the court must accept all allegations in the complaint as true, and view all

factual disputes in favor of the plaintiff.  Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d

Cir. 2002).  Unlike a 12(b)(6) motion, which is limited to the pleadings, when ruling on a Rule

12(b)(2) motion, a court may review affidavits and other evidence submitted by the parties, since

it "requires resolution of factual issues outside of the pleadings."  Correctional Medical Care, Inc.

v. Gray, 07-2840, 2008 WL 248977, *5 (E.D. Pa. Jan. 30, 2008) (quoting Time Share Vacation

Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66-67 n. 9 (3d Cir. 1984)).

Once a defendant raises a Rule 12(b)(2) defense, the burden shifts to the plaintiff to

"prov[e] by affidavits or other competent evidence that jurisdiction is proper."  Metcalfe v.

Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (quoting Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996)).  When no evidentiary hearing on the jurisdictional issue has been held, "the plaintiff need only demonstrate a prima facie case of personal jurisdiction at the preliminary stages of litigation."  Id.  (citing O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007)).  "The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting Provident Nat. Bank v. Cal. Fed. Sav. & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987)).

Under Rule 12(b)(6), a defendant can argue that the plaintiff failed to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  As the complaint must provide the defendant with fair notice of the claim, see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a claim for relief, which contains a short and plain statement, showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8.

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support of its claims.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original and internal citations omitted).  The court need not accept unsupported inferences, Cal. Pub. Employees Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), nor legal

conclusions cast as factual allegations, Twombly, 550 U.S. at 556.  Legal conclusions without

factual support are not entitled to the assumption of truth.  See Ashcroft v. Iqbal, 556 U.S. 662,

677-679 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not" satisfy the requirements of Rule 8).

Once the court winnows conclusory allegations from those allegations supported by fact,

which it accepts as true, the court must engage in a common sense review of the claim, to

determine whether it is plausible.  This is a context-specific task, for which the court should be

guided by its judicial experience.  The court must dismiss the complaint if it fails to allege

enough facts "to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678

(quoting Twombly, 550 U.S. at 570).  A "claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  Iqbal, 556 U.S. at 677.

## IV. DISCUSSION

### A.  Motion to Strike

The Court first considers Defendant Filla's motion to strike the declaration of John P.

Rodgers, Esq. (Doc. 78), which Plaintiff offered in response to Filla's motion to dismiss for lack

of personal jurisdiction.  As previously stated, once a defendant raises a Rule 12(b)(2) defense,

the burden shifts to the plaintiff to "prov[e] by affidavits or other competent evidence that

jurisdiction is proper."  Metcalfe, 566 F.3d at 330 (quoting Dayhoff Inc., 86 F.3d at 1302).

Competent evidence includes affidavits that are based on the affiant's personal knowledge or

some other admissible ground.  See LDM Sys., Inc.v. Russo, No. Civ. A. 97-3111, 1997 WL

431005, *1 (E.D. Pa. July 15, 1997) (disregarding a substantial portion of an affidavit in support

of jurisdiction, since it was largely conclusory and speculative).

Filla argues that the Court should strike all assertions made by Mr. Rodgers, which are without personal knowledge, are legal opinions or conclusions, or are based on inadmissible hearsay.  Filla further argues that if the Court strikes those assertions, then the Court should strike Mr. Rodgers's declaration in its entirety, since there would be no remaining substantive contentions.

## 1. Opinion or legal conclusion challenges to the Declaration of John P. Rodgers

Filla argues that Mr. Rodgers makes assertions that rely upon inadmissible opinions and legal conclusions in paragraphs 7, 9, 10, 12, and 13, of Mr. Rodgers's declaration.  Specifically, Filla objects to Mr. Rodgers's opinions that InSequence is the "alter ego" of MID (Doc. 62, Rodgers Decl., at ¶ 7); that certain persons acted as Filla's personal "agents" in Pennsylvania (id. at ¶¶ 9, 12, 13); and that Defendants are subject to the jurisdiction of regulators in Pennsylvania (id. at ¶ 10).  Plaintiff responds by arguing that, since Mr. Rodgers is a practicing attorney, his legal training affects how he perceives facts, and that his opinions are consistent with Rule 701 of the Federal Rules of Evidence.  Additionally, Plaintiff argues that Mr. Rodgers is competent to make legal conclusions.

Rule 701 states that the opinion testimony of a witness, who is not testifying as an expert, is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.

We agree with Defendant Filla.  Mr. Rodgers's opinion that InSequence is the "alter ego" of MID, that certain persons are "agents" of Filla, and that Pennsylvania regulations are applicable, are legal conclusions that are not permissible.  Even though Mr. Rodgers is an attorney, he is prohibited from rendering a legal opinion.  See Jones v. Judge Technical Services, Inc., Civ. Action No. 11-6910, 2013 WL 5777159, *4 (E.D. Pa. Oct. 25, 2013) (finding that the declaration of a retained expert, who was also an attorney, inadmissible, since it improperly offered a legal opinion).  Therefore, the Court will strike the portion of paragraph 7, where Mr. Rodgers states that it is his belief that InSequence is the alter ego of MID.  Specifically, the Court will strike the phrase, "which I believe to be the alter ego of Defendant Maps [inD]eed, Inc." (Doc. 62, Rodgers Decl., at ¶ 7.)  Additionally, the Court will strike paragraphs 9, 12, and 13, as legal conclusions on the agency relationship between certain individuals and Defendant Filla, and for lacking factual support of the allegations.[1]  The Court will also strike paragraph 10, in which Mr. Rodgers opines as to securities liability in Pennsylvania.[2]

---

[1] Paragraph 9 states, "Upon information[] and belief, and at times relevant to the causes of action alleged in my amended complaint, agents of Mr. Filla and Defendant InSequence, Inc. solicited investment money and/or sold corporate securities to other Pennsylvania residents."

Paragraph 12 states, "Upon information and belief, Mr. Filla knew or reasonably should have known that his agents were soliciting Pennsylvania residents to invest money in Defendants Maps [inD]eed, Inc."

Paragraph 13 states, "Based on the activities and solicitations of the agents of Mr. Filla and Defendant InSequence, Inc. in Pennsylvania, my business has suffered harm."

[2] Paragraph 10 states, "Upon information and belief, individuals and corporations soliciting investment money and selling corporate securities in Pennsylvania are subject to regulations and are within the jurisdiction of regulators in Pennsylvania."

**2. Lack of personal knowledge challenges to the Declaration of John P. Rodgers**

Defendant Filla also argues that Plaintiff lacks personal knowledge concerning the leadership composition of InSequence and MID, InSequence's business activities with other Pennsylvania entities, and purported communications between Filla and the DeAnthonys.  (Id. at ¶¶ 7-9, 11.)  The remaining portion of paragraph 7 states, "Defendant James Filla ("Mr. Filla") is the president and CEO of Defendant Insequence, Inc., . . . ."  (Id. at ¶ 7.)  Paragraph 8 states, "At all times relevant to the causes of action alleged in my amended complaint, Mr. Filla was a corporate director of Defendant Maps [inD]eed, Inc."  Lastly, paragraph 11 states,

> Upon information and belief, and at times relevant to the causes of action alleged in my amended complaint, Mr. Filla exchanged emails, telephone calls, and other forms of communication with Defendants Jeffrey DeAnthony, Victor DeAnthony, and a man named Frank Sepco, both in Pennsylvania and elsewhere.

(Id. at ¶ 11.)

Plaintiff argues that he gained personal knowledge that Filla was an MID director and is president and CEO of InSequence, from Filla's August 25, 2014 declaration (Doc. 46), in which, Filla stated that he was a member of the Board of Directors of MID until he resigned, on July 3, 2013.[3]  (Doc. 46, Filla Aug. 25, 2014 Decl., at ¶ 12.)  Plaintiff does not specifically address Filla's objection to Mr. Rodgers's statement about the alleged communications between Filla and the DeAnthonys.

Pursuant to Rule 602 of the Federal Rules of Evidence,

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove

---

[3] As a result of Plaintiff's argument, Filla argues that paragraphs 8 and 9 should be stricken because they contain inadmissible hearsay, since Plaintiff asserts that he gained his personal knowledge of those facts from Filla's August 25, 2014 declaration.

personal knowledge may consist of the witness's own testimony.

FED. R. EVID. 602. The Court has discretion in determining whether Mr. Rodgers has sufficient personal knowledge. U.S. v. Lake, 150 F.3d 269, 273 (3d Cir. 1998). "Rule 602 creates a low threshold of admissibility; witness testimony should be admitted if the judge could reasonably find that the witness perceived the event." Knopick v. Downey, Civ. No. 1:09-CV-1287, 2013 WL 1882983, *12 (M.D. Pa. May 6, 2013) (citing Sullivan v. Warminster Twp., 461 F. App'x 157, 162 (3d Cir. 2012)). Witness testimony is not admissible if it is based on speculation of what a third party believed or knew. Id. (citing Palfrey v. Jefferson-Morgan Sch. Dist., Civ. No. 06-CV-1372, 2008 WL 4412230, *12 (W.D. Pa. Sept. 25, 2008)).

Here, the Court agrees with Filla and will strike paragraphs 7, 8, and 11, because Plaintiff has not established admissibility of these statements. Mr. Rodgers admits that his personal knowledge of Filla's roles, within the structure of InSequence and MID, came from Filla's declaration (Doc. 46). Mr. Rodgers does not show any other basis of his personal knowledge of paragraphs 8 and 9. Additionally, we see no basis of personal knowledge concerning Filla's communications with others that did not include Mr. Rodgers, as set forth in paragraph 11, nor does Mr. Rodgers provide such a basis. See Green Keepers, Inc. v. Softspikes, Inc., No. Civ. A. 98-2255, 1998 WL 717355, *3 (M.D. Pa. Sept. 23, 1998) (finding that the affiant did not have personal knowledge and information when the affiant learned the information from unidentified representatives of the company, other third parties, and a magazine article).

### 3. Hearsay challenges to the Declaration of John P. Rodgers

Defendant Filla argues that paragraphs 3, 4, 5, and 6 of Mr. Rodgers's declaration contain hearsay. Filla asserts that Plaintiff did not meet its burden to establish the foundation and

admissibility of Mr. Rodgers's statements concerning Jeffrey and Victor DeAnthony's representations as employees of MID and InSequence, nor the statement that MID operated out of InSequence's corporate office.  (Doc. 62, Rogers Decl., at ¶¶ 3-6.)  Plaintiff responds by arguing that Mr. Rodgers's use of the words "represent" and "purport," show that he could have inferred his knowledge from general appearances, circumstances, and prior experiences when dealing with Victor and Jeffrey DeAnthony and Frank Sepco.

Hearsay is an out of court statement offered by a party, to prove the truth of the matter asserted in the statement.  FED. R. EVID. 801.  Rule 801 defines "statement" as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."  Id. An "assertion" can be express or implied.  U.S. v. Reynolds, 715 F.2d 99, 103 (3d Cir. 1983). Authorities have agreed with Advisory Committee note (a), which places the burden of proving the intention of an assertion on the party claiming such intention.  See U.S. v. Butler, 763 F.2d 11, 15 (1st Cir. 1985); see also U.S. v. Hensel, 699 F.2d 18, 30-31 (1st Cir. 1983).

The following paragraphs are at issue:

3.  In or around 2012, I and/or [Northeast Revenue Services, LLC] was approached in Pennsylvania by Defendant Jeffrey DeAnthony, Defendant Victor DeAnthony, and Frank Sepco, who represented himself to be an employee of [Maps inDeed], Inc. and solicited to invest money with Defendant Maps [inD]eed, Inc.

4.  At all times relevant to the causes of action alleged in my amended complaint, Defendant Jeffrey DeAnthony, Defendant Victor DeAnthony, and a man named Frank Sepco purported to be . . . agents or employees of Defendant In[S]equence, Inc.

5.  At all times relevant to the causes of action alleged in my amended complaint, it was represented to me that Defendant Jeffrey DeAnthony, Defendant Victor DeAnthony, and a man named Frank Sepco were receiving compensation from Defendant In[S]equence, Inc.

6.  At all times relevant to the causes of action alleged in my amended complaint, it

10

was represented to me that Defendant Maps [inD]eed, Inc. was operating out of corporate offices of Defendant In[S]equence, Inc.

(Doc. 62, Rogers Decl., at ¶¶ 3-6.)

We find that paragraph 5 contains inadmissible hearsay, as Plaintiff has not provided a basis for Mr. Rodgers's belief, other than what could have been told to him by Defendants Jeffrey and Victor DeAnthony and Frank Sepco. We find that paragraphs 3, 4, and 6 are admissible, as Plaintiff has not proved the intention of an assertion, and it is reasonable to conclude that the basis of those statements could have been gleaned from the circumstances of engaging in business with MID.

Therefore, we will strike paragraphs 5 and 7-13. We will not strike the entire declaration as there are substantive portions that remain.

## B. Motion to dismiss for lack of personal jurisdiction

The Court next considers Filla's motion to dismiss based on personal jurisdiction under Rule 12(b)(2). "Where a court is asked to rule on a combination of Rule 12 defenses, it should pass on the jurisdictional issues first." Sneberger v. BTI Americas, Inc., No. CIV. A. 98-932, 1998 WL 826992, *1 (E.D. Pa. Nov. 30, 1998) (quoting Friedman v. Israel Labour Party, 957 F. Supp. 701, 706 (E.D. Pa. 1997)). The Court must consider evidence that the parties have submitted outside of the pleadings, including the remaining portion of Mr. Rodgers's declaration. Plaintiff has the burden of demonstrating a prima facie case of personal jurisdiction, Metcalfe, 566 F.3d at 330, by "establishing with reasonable particularity[,] sufficient contacts between the defendant and the forum state." Farino, 960 F.2d at 1223 (quoting Provident Nat. Bank, 819 F.2d at 437).

Filla argues that the Court does not have general or specific personal jurisdiction and that the fiduciary shield doctrine applies.  Plaintiff argues that the Court does have general and specific jurisdiction because Filla is president of InSequence and a board member of MID.

A federal court in Pennsylvania has jurisdiction over parties, to the extent Pennsylvania's long-arm statute permits.  Pennsylvania's long-arm statute authorizes jurisdiction, "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b).  The due process clause of the Fourteenth Amendment requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction "comport[s] with fair play and substantial justice."  Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)).  "[M]inimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., 480 U.S. 102, 109 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  When the defendant raises a jurisdictional defense, the plaintiff has the "burden of establishing either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)."  Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551, 554 (3d Cir. 1993).

**1.  Specific Jurisdiction**

The Court first considers the purposeful availment doctrine to determine whether it has specific jurisdiction over Defendant Filla.  The purposeful availment doctrine allows a court to

exercise jurisdiction if "(1) the defendant purposefully directs its activities into a forum, (2) the case arises from those activities, and (3) the exercise of jurisdiction 'comport[s] with fair play and substantial justice.'" In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d 538, 557 (M.D. Pa. 2009) (citing O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007)) (internal quotations omitted).  In an attempt to meet its burden, Plaintiff must counter Filla's affidavit with "contrary *evidence* in support of purposeful availment jurisdiction." Id. at 559-60.

Defendant Filla, a Missouri resident, submits two affidavits with his motion to dismiss (Docs. 46 and 73).  Filla declares that he was an employee of InSequence, not the president, during the time relevant to Plaintiff's claims, and that he became president of the company, on June 12, 2013.  (Doc. 46, Decl. of Filla, at ¶ 1; Doc. 73, Suppl. Decl. of Filla, at ¶ 1.) Additionally, Filla declares that he never employed Defendants Victor or Jeffrey DeAnthony in his personal capacity, and that they were formerly employed by InSequence.  (Doc. 73, Suppl. Decl. of Filla, at ¶ 2.)

As to his role with Defendant MID, Filla declares that when MID was formed in 2010, he was named its initial Executive Vice President, which did not include day-to-day operational responsibilities or actual business duties.  (Doc. 46, Decl. of Filla, at ¶ 13.)  Filla also declares that he served as a member of the Board of Directors of MID until July 3, 2013, and that his role within MID was limited to consulting on occasional business and profitability matters.  (Id. at ¶ 12.)  Filla also states that he may have briefly served in the titular role as Chief Technology Officer, whose duties did not entail any involvement with MID's daily business operations.  (Id. at ¶ 13.)

Filla further declares that he has no recollection of communicating with any of Plaintiff's representatives, in any way. (Id. at ¶ 14.) Filla also states that he is not a party to the May 4, 2012 agreement, played no role in its performance, and did not receive any services or payments made under it by Plaintiff. (Id at ¶ 18.) Filla declares that he does not maintain or operate any business offices or facilities in Pennsylvania, and that at all times relevant to Plaintiff's claims, he only used business facilities leased by InSequence in Virginia and Missouri. (Id. at ¶ 4.)

Plaintiff offers an affidavit from Mr. Rodgers, the managing member of Northeast Revenue Services, LLC, to show that the Court has personal jurisdiction over Filla. In it, Mr. Rodgers does not make any statements concerning Filla's direct role with the allegations, either in his corporate or personal capacity. Mr. Rodgers does declare that he and/or Plaintiff were approached in Pennsylvania, by Defendants Jeffrey and Victor DeAnthony and Frank Sepco, who represented themselves to be employees of MID and also agents or employees of InSequence. (Doc. 62, Rodgers Decl, at ¶¶ 3-4.) Mr. Rodgers also declares that it was represented to him that MID was operating out of the offices of InSequence. (Id. at ¶ 6.)

Plaintiff's argument lies on the basis that Filla is a corporate director of MID and that Defendants Victor and Jeffrey DeAnthony acted as Filla's agents. Plaintiff argues that, since Filla was a corporate director of MID and is president and CEO of InSequence, he may be personally liable under the Securities Exchange Act of 1934 and the Pennsylvania Securities Exchange Act, citing Rochez Brothers, Inc. v. Rhoades, 527 F.2d 880, 883 (3d Cir. 1975).

Filla responds by arguing that Rochez Brothers does not support Plaintiff's assertion, since the court considered the opposite scenario: the fraud of an officer imputed to the corporation. Filla also argues that Plaintiff has not alleged that Filla permitted the DeAnthonys

14

to use his reputation and goodwill, or his personal offices and facilities.

We agree with Defendant Filla.  The facts of the entire record and the declaration of Mr. Rodgers, does not establish a prima facie showing of personal jurisdiction.  Plaintiff does not offer any evidence that Filla, in his corporate capacity as a board member of MID, or in his personal capacity, purposefully directed activities into the forum.

Additionally, the mere fact that Filla may be personally liable under the securities laws, does not automatically give the Court jurisdiction over him, absent a showing that he had the requisite minimum contacts.  <u>Sneberger</u>, 1998 WL 826992 at *4 (stating that even though defendants may be personally liable as employers under the Pennsylvania Wage Payment and Collection Law, the plaintiff must still show that defendants have the requisite minimum contacts).  It is established that,

> if [a] corporate officer is charged with violating a statutory scheme that provides for personal, as well as corporate liability, courts have held that contacts with the forum stemming from corporate actions should be considered when evaluating whether the officer, as an individual, has minimum contacts with the forum which would support the assertion of personal jurisdiction.

<u>Nat'l Precast Crypt Co. v. Dy-Core of Pa., Inc.</u>, 785 F. Supp. 1186, 1191 (W.D. Pa. 1992).  This does not provide for automatic jurisdiction over the corporate officer in his individual capacity as Plaintiff suggests.  Instead, it requires the Court to consider the contacts made in the officer's corporate capacity, to determine if they rise to the requisite, minimum level.  In considering Filla's contacts in both his personal and corporate capacity, the Court finds that Plaintiff has not established, with reasonable particularity, sufficient contacts between Defendant Filla and Pennsylvania, that would allow the Court jurisdiction over him.

**2.  General Jurisdiction**

The Court next considers whether it has general jurisdiction over Defendant Filla.  Filla declares that he is a lifelong Missouri resident, he does not own any property in Pennsylvania, he has not solicited or transacted any business in Pennsylvania on his own behalf, he has not directly derived any income or revenue from any sources located in Pennsylvania, and he has only visited Pennsylvania once in the last 15 years for a personal matter.  (Doc. 46, Filla Decl., at ¶¶ 4, 6, 10-11.)  Filla declares that he does not maintain or operate any business offices or facilities in Pennsylvania, and that at all times relevant to Plaintiff's claims, he only used business facilities leased by InSequence in Virginia and Missouri.  (Id. at ¶ 4.)

A court has general jurisdiction over a defendant when the defendant possesses "continuous and systematic contacts with the forum[,]" regardless of the "claim's relationship to the defendants' in-forum contacts."  In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d at 565.  Plaintiff asserts that the Court has general jurisdiction over Filla because of the activities of his alleged agents and the fact that he is/was a director of MID and is/was the president and CEO of InSequence.  Plaintiff argues that employing an agent and selling securities in a forum are enough to establish general jurisdiction.  Filla responds by arguing that the Court may not exercise general jurisdiction based solely on Filla's corporate title.  Additionally, Filla stated in his declaration, that he was not president of InSequence at the time of the alleged wrongdoing, and that he never personally employed Defendants Jeffrey and Victor DeAnthony, as they were former employees of InSequence.

Filla also argues that the fiduciary or corporate shield doctrine applies.  The fiduciary or corporate shield doctrine provides that "[i]ndividuals performing acts in a state in their corporate

16

capacity are not subject to personal jurisdiction of the courts of that state for those acts." Gentex Corp. v. Abbott, 978 F. Supp. 2d 391, 402 (M.D. Pa. 2013) (quoting Bowers v. NETI Techs., Inc., 690 F. Supp. 349, 357 (E.D. Pa. 1988)) (internal quotations omitted).  An exception to this general rule is that a "corporate agent may be held personally liable for torts committed in the corporate capacity."  Id., (quoting Mendicino v. Lotus Orient Corp., No. 10-1867, 2010 WL 4104580, *7 (E.D. Pa. Oct. 19, 2010)).  To determine whether the exception applies, courts must consider all of the surrounding circumstances, including such as factors as, "the defendant's 'role in the corporate structure, the quality of the officer's contacts, and the extent and nature of the officer's participation in the alleged tortious conduct.'" Sneberger, 1998 WL 826992 at *5 (quoting Elbeco Inc. v. Estrella de Plato, Corp., 989 F. Supp. 669, 676 (E.D. Pa. 1997)); see TJS Brokerage & Co., Inc. v. Mahoney, 940 F. Supp. 784, 789 (E.D. Pa. 1996) (finding that the exception applied when the defendant was the sole shareholder and president of the company, the defendant visited the plaintiff's offices in Pennsylvania and executed the agreement in Pennsylvania, and according to the plaintiff's allegations, had a significant role in the tortious conduct).

In this case, we find that the surrounding circumstances do not permit us to consider Filla's contacts with Pennsylvania, when he was in his corporate capacity, to determine if we have personal jurisdiction over him.  At the time of the alleged conduct, Filla was a member of the Board of Directors of MID.  Filla was also named as MID's initial Executive Vice President when MID was formed in 2010, and he served as Chief Technology Officer.  Filla stated in his declaration that none of his roles entailed involvement in MID's daily business operations.  Also, Filla was not the president of InSequence at the time of the alleged conduct, and was only an

employee.  We find that Filla did not have a major role in the corporate structure at the time of the alleged conduct.  Filla has only visited Pennsylvania once in the last fifteen years, and that was for a personal matter.  There is no evidence that the quality of his contacts with Pennsylvania were significant or that he participated in tortious conduct.

Plaintiff does not present any evidence of continuous and systematic contacts with Pennsylvania by Filla, in a personal or official capacity.  Plaintiff does not come forward with any evidence supporting its assertions that Filla's involvement, when on the board of MID, was the type of involvement that would confer personal jurisdiction over him.  We therefore find that Plaintiff has not established a prima facie showing of personal jurisdiction over Defendant Filla.

## V.  CONCLUSION

For the reasons set forth above, the Court will grant in part and deny in part, Filla's motion to strike the declaration of Mr. Rodgers, and will grant Filla's motion to dismiss for lack of personal jurisdiction.  An appropriate order will follow.

18