# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

_____
                                        :
NORTHEAST REVENUE,                      :
SERVICES, LLC,                          :
                                        :
                Plaintiff,        :        Civil Action No. 3:14-cv-00852
                                        :
                v.                :        (Judge Kosik)
                                        :
MAPS INDEED, INC., *et al.*,            :
                                        :
                Defendants.       :
_____:

## MEMORANDUM

Before the Court are Defendant InSequence, Inc.'s ("InSequence") Motion to

Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (Doc. 63); Defendants

Victor DeAnthony and MapsIndeed, Inc.'s ("MID") Motion to Dismiss for Failure to State a

Claim, and in the Alternative, for a More Definite Statement Under Rule 12(e) (Doc. 77); and

Defendant Jeffrey DeAnthony's Motion to Dismiss for Failure to State a Claim (Doc. 94).  For

the reasons which follow, the Court will grant in part, and deny in part, Defendants' motions to

dismiss.

## I.  PROCEDURAL HISTORY

On May 2, 2014, Plaintiff filed its Complaint (Doc. 1) against MID, Victor DeAnthony,

and James Filla.  On July 29, 2014, Plaintiff filed an Amended Complaint (Doc. 17) against

MID, Victor DeAnthony, Jeffrey DeAnthony, InSequence, Inc. ("InSequence"), and James Filla.

On September 29, 2014, InSequence filed its motion to dismiss (Doc. 63).  The parties fully

briefed this motion (Docs. 64, 74, 81).  On October 31, 2014, Defendants Victor DeAnthony and

MID filed their motion to dismiss (Doc. 77), and the parties filed their corresponding briefs (Docs. 83, 85, 90). On January 29, 2015, Defendant Jeffrey DeAnthony filed a motion to dismiss (Doc. 94), and the parties filed their corresponding briefs (Docs. 99,102, 103). On April 30, 2015, the Court entered an Order, granting James Filla's motion to dismiss and dismissing him from the present action. The parties fully briefed the three motions to dismiss, and they are ripe for disposition.

## II. FACTUAL BACKGROUND

The facts, read in the light most favorable to the Plaintiff, the non-moving party, are as follows. Plaintiff, Northeast Revenue Services, LLC, is a Pennsylvania limited liability company. (Doc. 17, Pl.'s Am. Compl., ¶ 4.) In the Amended Complaint, Plaintiff alleges that Defendant MID is a Virginia corporation, with a principal address in Virginia. (Id. at ¶ 5.) Plaintiff also alleges that Defendant InSequence is a Missouri corporation, with the same registered office as MID, as well as an office in Missouri, and "was/is the parent company, controlling shareholder, and alter ego" of MID. (Id. at ¶ 8.) Plaintiff alleges that Defendant Victor DeAnthony "was/is the president and chief executive officer" of MID, that Defendant Jeffrey DeAnthony "was/is the chief marketing officer" of MID, and that both are/were employees, agents, representatives, or principals of InSequence. (Id. at ¶¶ 6, 7, 14.)

Plaintiff's Amended Complaint stems from dealings with MID, and two of its alleged employees, Victor and Jeffrey DeAnthony. Plaintiff alleges that MID, through the individual Defendants and InSequence, purported to be a technology company using global satellite imagery to provide services to clients, by accessing and sharing geospatial and property data in real time and online. (Id. at ¶ 23.)

On May 4, 2012, Plaintiff entered into an agreement ("Agreement") with MID.  (Id. at ¶ 15; Ex. E, Agreement.)  Plaintiff alleges that the Agreement was a profit-sharing, licensing, and stock-purchase option agreement, and that in return for services provided by MID, Plaintiff promised to pay MID $150,000 in three installments.  (Id. at ¶¶ 15, 45.)  Plaintiff claims that it fully performed under the Agreement, and that Defendants failed to perform and did not provide any of the agreed upon products, support, and/or services.  (Id. at ¶¶ 46-47.)

Plaintiff alleges that it entered into the Agreement, because of the individual Defendants' false promises and misrepresentations.  (Id.)  Plaintiff claims that the terms of the Agreement were negotiated in Pennsylvania, and that false financial statements and projections were supplied to Plaintiff, by Defendants in Pennsylvania.  (Id. at ¶¶ 36-37.)  Plaintiff also alleges that Defendants Jeffrey and Victor DeAnthony, personally extended oral warranties to Plaintiff regarding the viability and profitability of the products, services, and investment opportunities under the Agreement.  (Id. at ¶¶ 40-41.)

### III. STANDARD OF REVIEW

Defendant InSequence files its motion to dismiss under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.  In considering a motion to dismiss under both Rule 12(b)(2) and Rule 12(b)(6), the court must accept all allegations in the complaint as true, and view all factual disputes in favor of the plaintiff.  Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002).  Unlike a 12(b)(6) motion, which is limited to the pleadings, when ruling on a Rule 12(b)(2) motion, a court may review affidavits and other evidence submitted by the parties, since it "requires resolution of factual issues outside of the pleadings."  Correctional Medical Care, Inc. v. Gray, 07-2840, 2008 WL 248977, *5 (E.D. Pa. Jan. 30, 2008) (quoting

<u>Time Share Vacation Club v. Atl. Resorts, Ltd.</u>, 735 F.2d 61, 66-67 n. 9 (3d Cir. 1984)).

Once a defendant raises a Rule 12(b)(2) defense, the burden shifts to the plaintiff to "prov[e] by affidavits or other competent evidence that jurisdiction is proper." <u>Metcalfe v. Renaissance Marine, Inc.</u>, 566 F.3d 324, 330 (3d Cir. 2009) (quoting <u>Dayhoff Inc. v. H.J. Heinz Co.</u>, 86 F.3d 1287, 1302 (3d Cir. 1996)).  When no evidentiary hearing on the jurisdictional issue has been held, "the plaintiff need only demonstrate a prima facie case of personal jurisdiction at the preliminary stages of litigation." <u>Id.</u> (citing <u>O'Connor v. Sandy Lane Hotel Co.</u>, 496 F.3d 312, 316 (3d Cir. 2007)).  "The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" <u>Mellon Bank (East) PSFS, Nat. Ass'n v. Farino</u>, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting <u>Provident Nat. Bank v. Cal. Fed. Sav. & Loan Assoc.</u>, 819 F.2d 434, 437 (3d Cir. 1987)).

Under Rule 12(b)(6), a defendant can argue that the plaintiff failed to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  As the complaint must provide the defendant with fair notice of the claim, <u>see</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a claim for relief, which contains a short and plain statement, showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8.

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support of its claims.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (alteration in original and internal citations omitted).  The court need not accept unsupported inferences, <u>Cal. Pub. Employees Ret. Sys. v. The Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004), nor legal conclusions cast as factual allegations, <u>Twombly</u>, 550 U.S. at 556.  Legal conclusions without factual support are not entitled to the assumption of truth.  <u>See Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-79 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not" satisfy the requirements of Rule 8).

Once the court winnows conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a common sense review of the claim, to determine whether it is plausible.  This is a context-specific task, for which the court should be guided by its judicial experience.  The court must dismiss the complaint if it fails to allege enough facts "to state a claim to relief that is plausible on its face." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 677.

Defendants Victor DeAnthony and MID file their motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and alternatively, for a more definite statement under Rule 12(e).  Defendant Jeffrey DeAnthony filed his motion to dismiss under Rule 12(b)(6).

## IV. DISCUSSION

We will first address Defendant InSequence's motion to dismiss under Rule 12(b)(2), since "[w]here a court is asked to rule on a combination of Rule 12 defenses, it should pass on

the jurisdictional issues first." Sneberger v. BTI Americas, Inc., No. CIV. A. 98-932, 1998 WL

826992, *1 (E.D. Pa. Nov. 30, 1998) (quoting Friedman v. Israel Labour Party, 957 F. Supp. 701,

706 (E.D. Pa. 1997)).  We will then discuss the remaining Defendants' motions to dismiss by

Count.

**1.  InSequence's Rule 12(b)(2) Motion**

   Defendant InSequence argues that Plaintiff does not allege personal jurisdiction , since

InSequence was not a party to the Agreement and denies any involvement with Plaintiff or

MID's performance thereunder.  Specifically, InSequence argues that the Court does not have

specific jurisdiction over it, because Plaintiff inadequately alleges agency.  InSequence also

argues that the Court does not have general jurisdiction over it, because Plaintiff only alleges

insufficient conclusory allegations.  Plaintiff responds by arguing that the Court has general and

specific jurisdiction over InSequence, since InSequence is the parent company and alter ego of

MID, InSequence employed the players in the scheme, and InSequence provided its agents with

the facilities, resources, and compensation necessary to facilitate the alleged fraud.

   A federal court in Pennsylvania has jurisdiction over parties to the extent Pennsylvania's

long-arm statute permits.  Pennsylvania's long-arm statute authorizes jurisdiction, "to the fullest

extent allowed under the Constitution of the United States and may be based on the most

minimum contact with this Commonwealth allowed under the Constitution of the United States."

42 Pa.C.S.A. § 5322(b).  The due process clause of the Fourteenth Amendment requires the

defendant to have minimum contacts with the forum state and requires the exercise of

jurisdiction to "comport[s] with fair play and substantial justice."  Remick v. Manfredy, 238 F.3d

248, 255 (3d Cir. 2001) (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)).

"[M]inimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" <u>Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.</u>, 480 U.S. 102, 109 (1987) (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985)).  When the defendant raises a jurisdictional defense, the plaintiff has the "burden of establishing either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)."  <u>Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.</u>, 983 F.2d 551, 554 (3d Cir. 1993).  Plaintiff has the burden of demonstrating a *prima facie* case of personal jurisdiction, <u>Metcalfe</u>, 566 F.3d at 330, by "establishing with reasonable particularity[,] sufficient contacts between the defendant and the forum state." <u>Farino</u>, 960 F.2d at 1223 (quoting <u>Provident Nat. Bank</u>, 819 F.2d at 437).

Although we must treat Plaintiff's allegations as true at this point, we do not accept legal conclusions, without factual support, as true.  Accordingly, we look to see if Plaintiff adequately pleads facts that give rise to the facial plausibility of claims of agency and alter ego liability, on which Plaintiff bases its arguments for personal jurisdiction over InSequence.

The fraud of an officer of a corporation, may be imputed to the corporation when the officer's fraudulent conduct was (1) in the course of the employment and (2) for the benefit of the corporation.  <u>U.S. v. DiBona</u>, 614 F. Supp. 40, 44 (E.D. Pa. 1984).  Under Pennsylvania law, to determine whether conduct is in the scope of the employment, "the conduct must meet the following criteria: (1) it must be of the kind the actor was employed to perform; (2) it must occur substantially within the authorized time and space limits; and (3) it must be actuated, at least in

part, by a purpose to serve the master." <u>Shuman Estate v. Weber</u>, 419 A.2d 169, 173 (Pa. Super. Ct. 1980) (citing <u>Kemerer v. U.S.</u>, 330 F. Supp. 731 (W.D. Pa. 1971), aff'd, 474 F.2d 1338 (3d Cir. 1973)).

Plaintiff alleges that at the time of the Agreement, Victor DeAnthony was an executive director at InSequence, and Jeffrey DeAnthony was a director of business development at InSequence. Plaintiff also alleges that these individual Defendants made claims that InSequence would ensure the success and profitability of MID. Additionally, Plaintiff alleges that InSequence and MID share the same office space in Virginia. Although Plaintiff alleges various legal conclusions regarding an agency relationship between InSequence and the individual Defendants, we find that at this point, Plaintiff provided enough factual support to demonstrate a *prima facie* case of personal jurisdiction over InSequence. Therefore, we will consider InSequence's and remaining Defendants' motions to dismiss for failure to state a claim.

## 2. Defendants' Rule 12(b)(6) Motion

### i. Securities Fraud Claim (Count I)

Plaintiff alleges a claim under the Securities Exchange Act and SEC Rule 10b-5. InSequence and Jeffrey DeAnthony assert that the Agreement is not a security under 15 U.S.C. § 78a. Specifically, Defendants argue that the Agreement's "Purchase Option" is not a security, because it has no price term or strike date, the condition precedent was never met, so it never vested, and it is an agreement to agree at a later date. Defendants also argue that the Agreement's revenue sharing is not a security, because it involves the sharing of revenue, not profit, and that the revenue to be shared derives from Plaintiff's sales efforts, not the sole efforts of others.

8

In response, Plaintiff does not offer an argument in support of its claim that the Agreement is a profit sharing or purchase option agreement.  Instead, Plaintiff argues that the Agreement as a whole is a security, because the intended profits were expected to derive largely from the efforts of individuals other than Plaintiff.  Plaintiff argues that its duties under the Agreement were minimal, and included marketing "[MID] proprietary software to Counties and Municipalities in the Commonwealth of Pennsylvania," and assisting MID with the setup and maintenance.  (Doc. 17, Ex. E, Agreement, at ¶ 2.)

The threshold question therefore is, whether Defendants' alleged misconduct involved a purchase or sale of securities.  Section 10(b) of the Securities Exchange Act of 1934 prohibits a person "[t]o use or employ, in connection with the purchase or sale of any security . . ., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe."  Wharf (Holdings) Ltd. v. United Intern. Holdings, Inc., 532 U.S. 588, 592-93 (2001) (quoting 15 U.S.C. § 78j).  The SEC then promulgated Rule 10b-5, which makes it unlawful for "'any person, directly or indirectly, . . . [t]o make any untrue statement of material fact' in connection with the purchase or sale of securities."  Janus Capital Grp, Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2301 (2011) (quoting 17 CFR § 240.10b-5(b)).

To bring suit under federal securities law, a plaintiff must first show that the interest in question is a "security," under the Securities Exchange Act of 1934.  Rossi v. Quarmley, 604 F. App'x 171, 173 (3d Cir. 2015).  The term "security" includes "participation in any profit-sharing agreement," and an "investment contract."  15 U.S.C.A. § 77(b)(a)(1).  Plaintiff argues that the Agreement as a whole is a security, in terms of an investment contract.  The Supreme Court in SEC v. W.J. Howey Co., 328 U.S. 293 (1946), defined an "investment contract" as "a contract,

transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party . . . ."  Howey, 328 U.S. at 298-99.  "Thus, the three requirements for establishing an investment contract are: (1) 'an investment of money,' (2) 'in a common enterprise,' (3) 'with profits to come solely from the efforts of others.'"  Luzerne Cnty. Ret. Bd. v. Makowski, 627 F. Supp. 2d 506, 555 (2007) (quoting Great Lakes Chemical Corp. v. Monsanto Co., 96 F. Supp. 2d 376, 384 (D. Del. 2000) (citing Howey, 328 U.S. at 301)).

The parties do not dispute that the first two elements of the Howey test are met.  We therefore consider whether Plaintiff's interest meets the third requirement, that its profits were to come solely from the efforts of others.  The Supreme Court has clarified that requirement when they held that the profits must "'come solely from the efforts of others,' [they] were speaking of the profits that investors seek on their investment, not the profits of the scheme in which they invest."  S.E.C. v. Edwards, 540 U.S. 389, 897 (2004).  Also, the requirement that the profits come *solely* from the efforts of others has not been interpreted literally; instead, the requirement is met even if the "investor is required to perform some duties, as long as they are nominal or limited and would have little direct effect upon receipt by the participant of the benefits promised by the promoters."  Rossi, 604 F. App'x at 173 (quoting Lino v. City Investing Co., 487 F.2d 689, 692 (3d Cir. 1973)).  Additionally, courts have considered "whether the investor has meaningfully participated in the management of the partnership in which it has invested such that it has more than minimal control over the investment's performance."  Id. (quoting Steinhardt Grp., Inc. v. Citicorp, 126 F.3d 144, 152 (3d Cir. 1997)).

In examining whether the third requirement is met, we must examine "the substance and

economic reality of the situation rather than the formal characteristics of the parties." Id. at 174

(quoting Lino, 487 F.2d at 693).  In doing so, we must assess "the transaction as a whole,

considering the arrangement of the parties made for the operation of the investment vehicle in

order to determine who exercised control in generating profits for the vehicle." Id at 173

(quoting Steinhardt, 126 F.3d at 153).  "If the agreement governing the relationship 'is not on its

face an investment contract, and the plaintiff does not allege facts that call into question the

substance of the agreement, the plaintiff is not a security holder, as a matter of law.'" Id. (quoting

Goodwin v. Elkins & Co., 730 F.2d 99 (3d Cir. 1984) (Becker, J., concurring)).

Plaintiff asserts that the Agreement is an investment contract, and distinguishes it from

Lino v. City Investing Co., 487 F.2d 689 (3d Cir. 1973), where the court found that, since the

investor was required to make significant efforts, the agreement was not an investment contract.

The "significant efforts" consisted of opening a sales center, staffing it, devoting full time and

best efforts to it, recruiting and training distributors, and remaining a representative.  Id. at 693.

The Lino court held that "an investment contract can exist where the investor is required to

perform some duties, as long as they are nominal or limited and would have 'little direct effect

upon receipt by the participant of the benefits promised by the promoters.'" Id. at 692 (quoting

Sec. Act Release No. 5211 (Nov. 30, 1971), reported in 1971-72 Transfer Binder C.C.H.

Fed.Sec.L.Rep. # 98446).

Plaintiff argues that its efforts required under the Agreement do not rise to the level of the

significant efforts found in Lino.  We disagree and find that Plaintiff was required to make

"significant efforts" under the Agreement, as the benefits promised by the Agreement, were

based directly on Plaintiff's duties.  The Agreement requires Plaintiff to "market [MID]

proprietary software to Counties and Municipalities in the Commonwealth of Pennsylvania."
(Doc. 17, Pl.'s Am. Compl., Ex. E, Agreement at ¶ 2)  Additionally, Plaintiff must "assist [MID]
with the setup and maintenance of its geospatial information system."  (Id.)  In terms of
compensation, Plaintiff agreed to pay MID the sum of $150,000, and as additional compensation,
Plaintiff agreed to pay MID 25% of all revenues generated.  (Id. at ¶ 4.)  The Agreement requires
Plaintiff to "meaningfully participate[]" and have "more than minimal control over the
investment's performance."  Rossi, 604 F. App'x at 173 (quoting Steinhardt, 126 F.3d at 152).
We therefore find that the third Howey requirement, that profits were to come solely from the
efforts of others, is not met, since the profits Plaintiff was supposed to realize, were dependent
upon Plaintiff marketing MID's software to counties and municipalities.

We find that the Agreement is not a "security" under the Securities Exchange Act.
Therefore, we will dismiss Count I of the Amended Complaint.

## ii. Civil Racketeer Influenced and Corrupt Organizations Act ("RICO") Claim (Count II)

We next consider Count II of the Amended Complaint, which Plaintiff pleads in the
alternative to Count I.  Plaintiff alleges that Defendants violated 18 U.S.C. § 1961 *et seq*, and
conspired to violate 18 U.S.C. § 1961 *et seq*, in violation of 18 U.S.C. § 1961(d).

Considering the allegations of the Amended Complaint, Plaintiff appears to allege a claim
under section 1962(c).[1]  Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise

---

[1] In the event Plaintiff has intended to make a claim under 18 U.S.C. § 1962(a), we find that Plaintiff failed
to state a claim upon relief can be granted, since the Amended Complaint does not contain allegations of a section
1962(a) claim.  See Macauley v. Estate of Nicholas, 7 F. Supp. 3d 468, 484-85 (E.D. Pa. 2014).  Specifically,
Plaintiff has not alleged that Defendants utilized money received from a pattern of racketeering activity to acquire or
establish in an enterprise, nor has Plaintiff alleged an injury resulting from the investment of racketeering income,
distinct from an injury caused by the predicate acts.  See id.

> engaged in, or the activities of which affect, interstate or foreign commerce, to
> conduct or participate, directly or indirectly, in the conduct of such enterprise's
> affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  To state a claim under section 1962(c), a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985).

Section 1962(c) requires conduct by a "*person* employed by or associated with any *enterprise*," Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc., 46 F.3d 258, 262 (3d Cir. 1995); therefore, a plaintiff must allege activity by both a person and an enterprise.  A "person" includes "any individual or entity capable of holding a legal or beneficial interest in property."  18 U.S.C. § 1961(3).  An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).   The "enterprise" must be distinct from the defendant "persons."  See Jaguar, 46 F.3d at 268.  "But, alleging conduct by officers or employees who operate or manage a corporate enterprise satisfies this requirement," and can be named as section 1962(c) "persons."  Id.  A section 1962(c) "enterprise," is "generally the vehicle through which the unlawful pattern of racketeering activity is committed . . . ."  Jaguar, 46 F.3d at 266 (quoting Nat'l Org. for Women v. Scheidler, 510 U.S. 249 (1994)).  Besides a legal entity, an "enterprise" can be an association-in-fact enterprise.  An association-in-fact enterprise requires "common 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'"  In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 368 (3d Cir. 2010) (quoting Boyle v. U.S., 556 U.S. 938, 946 (2009)).

Next, the plaintiff must show a "pattern of racketeering activity," which is defined in 18 U.S.C. § 1961(1), and includes the predicate acts, bank fraud, mail fraud and wire fraud, which Plaintiff alleges in the Amended Complaint.  A "pattern of racketeering activity" requires at least two acts of racketeering within a ten year period.  18 U.S.C. § 1961(5).  "To prove a pattern . . . a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity."  U.S. v. Bergrin, 650 F.3d 257 (2011) (quoting H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)) (emphasis in original).  A plaintiff must also "plead a specific nexus between the alleged predicate acts and the control of the alleged RICO enterprise."  Smith v. Jones, Gregg, Creehan & Gerace, LLP, No. 2:08-cv-365, 2008 WL 5129916, *6 (W.D. Pa. Dec. 5, 2008).  The inquiry is "whether the defendant participated in the 'operation or management' of an enterprise's affairs, and if so, whether he did so 'through a pattern of racketeering activity.'"  Antitrust Litig., 618 F.3d at 372.

Under Federal Rule of Civil Procedure 9(b), a plaintiff must plead with "particularity the 'circumstances' of the alleged fraud 'in order to place defendants on notice of the precise misconduct with which they are charged, and to safeguard against spurious charges of immoral and fraudulent behavior.'"  Devon IT, Inc. v. IBM Corp., 805 F. Supp. 2d 110, 123 (E.D. Pa. 2011) (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)).  This includes particularizing the role and conduct of each defendant.  See Smith, 2008 WL 5129916, *5.  A plaintiff may meet the particularity requirement by pleading the "date, place or time" or by "injecting precision and some measure of substantiation into [the] allegations."  Lum v. Bank of Am., 361 F.3d 217, 224 (citations omitted).

In this case, Victor DeAnthony and MID argue that Plaintiff's Amended Complaint does

not meet the distinctiveness requirement, since MID is alleged to be both the "person" and "enterprise" under section 1962(c). InSequence and Jeffrey DeAnthony do not dispute that Plaintiff adequately pleads a "person" and an "enterprise," but they do dispute that Plaintiff adequately pleads that they participated in an enterprise through a "pattern of racketeering activity," and that Plaintiff meets the heightened pleading standard of Rule 9(b). InSequence also argues that Plaintiff's agency arguments fail as a matter of law.

We first clarify that Rule 9(b) applies to the pleading of the predicate acts that constitute fraud, not the pleading of the entire RICO claim. For a RICO claim, Plaintiff must still plead at least two predicate acts by each Defendant and the required nexus between the alleged predicate acts and the control of the alleged RICO enterprise. See Antitrust Litig., 618 F.3d at 372. We first examine whether Plaintiff adequately pleads with particularity under Rule 9(b), a "pattern of racketeering activity," since the predicate acts consist of mail fraud, wire fraud and bank fraud.

In the Amended Complaint, Plaintiff alleges:

67. In addition to any legitimate transactions, and as detailed above, the course of conduct of this enterprise included bilking Pennsylvania citizens out of large sums of money.

68. As detailed above, [b]etween 2010 and 2013, Defendants engaged in separate schemes to defraud Plaintiff and other victims.

69. These separate acts were related to Defendants' common goal of using Defendant Maps Indeed, Inc. as a device, scheme, or artifice to defraud unsuspecting Pennsylvania investors.

70. The course of conduct displayed by Defendants necessarily consisted of instances of bank fraud, mail fraud, and wire fraud – all of which are additional "predicate acts" giving rise to the instant cause of action – in efforts to further the schemes of the enterprise.

71. As detailed above and exemplified by attached Exhibit "G," the enterprise's

15

fraud consisted of inter alia: (a) falsely declaring to would-be investors that former Pennsylvania Governor Tom Ridge was on Maps Indeed Inc.'s Board of Directors, (b) falsely declaring to would-be investors that Defendant Maps Indeed, Inc. was receiving large financial and political support from member of Congress, (c) falsely declaring to would-be investors that a founder of AOL was on Defendant Maps Indeed, Inc.'s Board of Directors, (d) falsely declaring to would-be investors that Defendant Insequence, Inc. was guaranteeing the success of Defendant Maps Indeed, Inc., (e) falsely declaring to would-be investors that Defendant Maps Indeed, Inc. was a risk-free investment, (f) issuing false pro formas and doctored financial statements to would-be investors, (g) and using such lies to con unsuspecting victims out of large sums of money.

. . .

73.  Defendants separate acts of fraud, perpetrated against Plaintiff and other victims, as well as Defendants' corresponding and consequential acts of mail fraud, bank fraud, and wire fraud, constitute a pattern of racketeering activity.

(Doc. 17, Pl's Am. Compl., at ¶¶ 67-71, 73.)

The predicate acts of mail (§ 1341) and wire fraud (§ 1343) will be examined together, since "[a]nalysis for mail fraud is transferable to wire fraud cases." U.S. v. Keller, 935 F. App'x 912, 914 n. 3 (3d Cir. 2010) (citing U.S. v. Morelli, 169 F.3d 798, 806 n. 9 (3d Cir. 1999) ("the wire fraud and mail fraud statutes differ only in form, not in substance, and cases . . . interpreting one govern the other as well")).  The predicate acts of wire and mail fraud require "(1) a scheme or artifice to defraud for purposes of obtaining money or property, (2) participation by the defendant with specific intent to defraud, and (3) use of the mails or wire transmissions in furtherance of the scheme."  Nat'l Sec. Sys. v. Iola, 700 F.3d 65, 105 (3d Cir. 2012).  These acts must be pled with particularity, and "[d]etailed allegations regarding the fraudulent scheme overall are not a substitute for detailed allegations about the acts of mail or wire fraud."  Id. (citing Warden v. McLelland, 288 F.3d 105, 114 (3d Cir. 2002); Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 659 (3d Cir. 1998)).  Additionally, Plaintiff must sufficiently

allege that each Defendant "participated in two or more predicate offenses sufficient to constitute a pattern." Amos v. Franklin Fin. Services Corp., 509 F. App'x 165, 168 (3d Cir. 2013) (quoting Banks v. Wolk, 918 F.2d 418, 421 (3d Cir. 1990)).

In the Amended Complaint, Plaintiff makes a general claim that Defendants' course of conduct includes "bilking Pennsylvania citizens out of large sums of money" and "bank fraud, mail fraud, and wire fraud." Plaintiff then lists alleged misrepresentations made by Defendants, but does not allege with any particularity the use of the mails or wire transmissions in furtherance of the scheme. Plaintiff also attaches various exhibits to the Amended Complaint, that are purported to contain these alleged misrepresentations, but there is no indication that the mails or wire transmissions were used. Although mailings and wire communications do not themselves have to be fraudulent to come under the mail and wire fraud statutes, Plaintiff must plead, with particularity, the use of the mails or wire transmissions in furtherance of the scheme. See Schmuck v. U.S., 489 U.S. 705, 715 (1989). There must be proof of a criminal violation for a Civil RICO recovery, see Bridge v. Phx. Bond & Indem. Co., 553 U.S. 639, 641 (2008), and in this case, the actual violation is the mailing or use of wire transmissions, which is not adequately pled with particularity. Because "detailed allegations regarding the fraudulent scheme overall are not a substitute for detailed allegations about the acts of mail or wire fraud," In re Am. Investors Life Ins. Co. Annuity Mktg. and Sales Practices Litig., 2006 WL 1531152, *10, we find that, in viewing the facts in the light most favorable to the Plaintiff, Plaintiff has not adequately pled a pattern of mail or wire fraud.

We next consider the predicate act of bank fraud under 18 U.S.C. § 1344. One is in violation of the bank fraud statute if one "knowingly executes, or attempts to execute, a scheme

17

or artifice," to "defraud a financial institution," or "to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344. In the Amended Complaint, Plaintiff pleads that Defendants committed bank fraud, but legal conclusions without the support of factual allegations, are not entitled to the assumption of truth. Therefore, we find that viewing the facts in the light most favorable to the Plaintiff, Plaintiff did not adequately plead the predicate acts of bank fraud, mail fraud, or wire fraud, and thus did not plead a "pattern of racketeering activity."

### iii. RICO Conspiracy Claim (Count III)

Section 1962(d) makes it "unlawful for any person to conspire to violate" 18 U.S.C. §§ 1962(a)-(c). 18 U.S.C. § 1962(d). "Any claim under section 1962(d) based on a conspiracy to violate [any of] the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." Macauley, 7 F. Supp. 3d at 485-86 (quoting Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993)). Because Plaintiff's RICO claims fail as a matter of law, Plaintiff's claim under section 1962(d) will be dismissed.

### V. CONCLUSION

For the reasons set forth above, the Court will grant Defendants' motions to dismiss. Plaintiff has voluntarily withdrawn Count V, a claim under the Pennsylvania Unfair Trade Practices Act, 73 P.S. § 201-2(2), of the Amended Complaint. The Court will decline to exercise supplemental jurisdiction over the remaining state law claims. An appropriate order will follow.